UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| J & J SPORTS PRODUCTIONS, INC., <br> Plaintiff, <br> v. <br> ADRIANA L. LORENZANA, <br> Defendant. | Case No. 13-cv-05554-BLF   (JCS) <br><br> **REPORT AND RECOMMENDATION RE MOTION FOR DEFAULT JUDGMENT** <br><br> **Dkt. No. 12** |

## I. INTRODUCTION

Plaintiff J & J Sports Productions, Inc. filed this action against Adriana L. Lorenzana, individually and doing business as Castroville Inn, asserting claims under the Communications Act of 1934 ("Communications Act"), 47 U.S.C. § 605, and the Cable & Television Consumer Protection and Competition Act of 1992 ("Cable Act"), 47 U.S.C. § 553. Plaintiff also asserts state law claims for conversion and unfair business practices. Defendant was properly served, but did not respond to the Complaint or otherwise appear in this action. The Clerk entered default on March 6, 2014. Dkt. No. 6. Plaintiff subsequently filed a Motion for Default Judgment ("Motion"), which was referred to the undersigned magistrate judge. The undersigned held a hearing on the Motion on May 9, 2014 at 9:30 a.m. For the reasons stated below, it is recommended that the Motion for Default Judgment be GRANTED and that Plaintiff be awarded $2,700.00 in damages.

## II. BACKGROUND

Plaintiff was previously granted commercial distribution rights to *Manny Pacquiao v. Juan Manuel Marquez, IV Welterweight Fight Program* (hereafter, "the *Program*"), which was telecast nationwide on Sunday, December 8, 2012. Compl. ¶ 14; *see also* Declaration of Joseph M.

Gagliardi ("Gagliardi Decl.") ¶ 5 and Exh. 1. On that date, Defendant allegedly displayed the *Program* without authorization her in establishment, Castroville Inn, in Castroville, California. *Id.* ¶ 17. Plaintiff alleges that Defendant intentionally and willfully intercepted the *Program* for commercial gain. Compl. ¶¶ 12, 18. In the Complaint, Plaintiff asserts four claims for relief: (1) violation of the Communications Act, 47 U.S.C. § 605; (2) violation of the Cable Act, 47 U.S.C. § 553; (3) conversion; and (4) violation of California Business and Professions Code § 17200.

In the Motion, Plaintiff requests that default judgment be entered on two of the four claims asserted in the Complaint. Declaration of Thomas P. Riley ("Riley Decl.") ¶ 6. Plaintiff seeks an award of $110,000 in statutory and enhanced damages under 47 U.S.C. § 605(E)(3)(C)(i)(II) and (ii), as well as $2,200 for the tort of conversion. In support of the Motion, Plaintiff submitted evidence that Defendant would have purchased a sublicense for $2,200 to display the Program lawfully, given the establishment's capacity of up to eighty people. Gagliardi Decl. ¶ 8 and Exh. 2.

Plaintiff also submitted an affidavit of an investigator, Nathan Tate, who observed the *Program* displayed on one television in the bar area of Castroville Inn on December 8, 2012. *See* Dkt. No. 12-3 (Declaration of Affiant) ("Tate Decl."). Mr. Tate states that he entered the establishment at approximately 8:30 p.m. and did not have to pay a cover charge. *Id.* There was a satellite dish and Mr. Tate did not observe any cable box. *Id.* He counted 54 people in the establishment, which he believed to have a capacity for 80 people. *Id.*

Mr. Tate saw part of the first round between Manny Pacquaio and Juan Marquez, and watched the match go into the second round. *Id.* Mr. Tate left at 8:35 p.m., about five minutes after having arrived. *Id.*

**III.  DISCUSSION**

    **A.  Legal Standard − Default Judgment**

After default has been entered against a party, a court may grant default judgment in its discretion. If the court is satisfied that jurisdiction is proper and that service of process upon the defendant was adequate, courts are instructed to consider several facts in determining whether to grant default judgment:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). In making its decision, the court takes all factual allegations in the complaint, except those relating to damages, as true. *TeleVideo Systems, Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987) (citing *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977)). Where a court finds that default should be granted, it may award damages if the plaintiff satisfies its burden of proving the damages through evidence. *See id.*

### B. Merits of Plaintiff's Claims

#### 1. The Communications Act

Plaintiff asserts claims under both the Communications Act, 47 U.S.C. § 605 and the Cable Act, 47 U.S.C. § 553, and seeks to recover under only the Communications Act. The Communications Act prohibits the unauthorized reception of programming by "wire or radio." 47 U.S.C. § 605(a). Judge Whyte, of this district, explains that "[a] single pirate violates section 553 if he intercepts a cable signal, he violates section 605 if he intercepts a satellite broadcast. But he cannot violate both by a single act of interception." *J & J Sports Productions, Inc. v. Manzano*, No. 08-1872, 2008 WL 4542962, at *2 (N.D. Cal. Sept. 29, 2008).

Plaintiff alleges, and the Court must assume true, that Defendant did not have license to display the Program but nonetheless did so without authorization. Mr. Tate's affidavit states that the establishment had a satellite dish and that he did not see a cable box. *See generally*, Tate Decl. Accordingly, Defendant's liability has been established under the Communications Act, which prohibits unauthorized interception by satellite. *Manzano*, 2008 WL 4542962, at *2.

#### 2. The Conversion Claim

Under California law, "to establish conversion, a plaintiff must show (1) his ownership of or right to possess the property at the time of conversion, (2) that the defendant disposed of the plaintiff's property rights or converted the property by a wrongful act, and (3) damages." *Bank of*

3

1  *N.Y. v. Fremont Gen. Corp.*, 523 F.3d 902, 914 (9th Cir. 2008).  Plaintiff alleges that (1) it had the
2  exclusive right to display the Program, (2) Defendant intercepted and displayed the Program
3  without authorization for commercial gain, and (3) Defendant suffered damages as a result.
4  Accordingly, Plaintiff has established a claim for conversion.

### C. Remaining *Eitel* Factors

The remaining *Eitel* factors, on balance, support entry of default judgment on Plaintiff's Cable Act and conversion claims.  While there is a strong policy favoring decision of cases on the merits, that policy consideration is outweighed here by the prejudice that would result from denial of default judgment, which would leave Plaintiff without a remedy.  *See Basto*, 2011 WL 2197756, at *3.  Although the amount of money at stake is not insignificant, this factor does not weigh against entry of default judgment, as the amount proposed by the undersigned is proportionate to the damages suffered and the need for deterrence of piracy.  Finally, the factual issues in this case are relatively straightforward and there is no indication that Defendant's failure to appear is due to excusable neglect.  Thus, consideration of the *Eitel* factors weighs in favor of entering default judgment.

### D. Damages

#### 1. Statutory & Enhanced Damages under 47 U.S.C. § 605(e)

The Communications Act authorizes a court, upon finding a violation of 47 U.S.C. § 605(a), to award a sum "not less than $1,000 or more than $10,000" for each violation.  47 U.S.C. § 605(e)(3)(C)(i)(II).  Moreover, if the court finds that the "violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain, the court in its discretion may increase the award of damages, … by an amount of not more than $100,000…."  47 U.S.C. § 605(e)(3)(C)(ii).  Plaintiff seeks an award of $110,000, the maximum amount of statutory and enhanced damages allowed.

"In its analysis of appropriate statutory damages, the Court may consider the cost of a commercial license for the program at issue …, Defendant's incremental profits, and the need to deter piracy."  *Mosley*, 2011 WL 2066713, at *5 (N.D. Cal. April 13, 2011), *report and recommendation adopted*, 2011 WL 2039374; *see also Joe Hand Promotions, Inc. v. Be*, No. 11-

4

1   1333-LHK, 2011 WL 5105375, at *4 (N.D. Cal. Oct. 26, 2011) ("A traditional method of
2   determining statutory damages is to estimate either the loss incurred by the plaintiff or the profits
3   made by the defendants.") (quotations omitted).  In determining statutory damages to award under
4   the Cable Act and Communications Act, courts in this district "consider a number of factors,
5   including: whether defendant imposed a cover charge; whether the defendant increased the price
6   of food or drink; the presence of advertising; the number of patrons; the number of televisions
7   used; whether the Defendants are repeat offenders; and the actual cost of a license." *J & J Sports
8   Productions, Inc. v. Mujadidi*, No. 11-5423-YGR (JCS), at 6 (N.D. Cal. Nov. 14, 2012) (citations
9   omitted).

10  The facts of this case do not justify a large award of statutory damages.  Plaintiff has
11  submitted evidence that Defendant would have purchased a sublicense for $2,200 to display the
12  Program lawfully, given the establishment's capacity of eighty people.  Gagliardi Decl. ¶ 8 and
13  Exh. 2.  Thus, $2,200 reflects the losses incurred.  Unlike several other cases brought by Plaintiff,
14  there is no evidence in this case that Defendant charged a cover, charged a premium on food or
15  drink, advertised for the event, or otherwise generated more revenue on Sunday, December 8,
16  2012, than on any other Sunday night.  Moreover, there was only one television displaying the
17  *Program*.

18  There is also no evidence that, at any time *prior* to December 8, 2012, Defendant
19  committed a similar, unlawful act.  Plaintiff's counsel submitted a supplemental declaration
20  alerting the undersigned to another case in this District in which Defendant is alleged to have
21  unlawfully intercepted another program on December 29, 2012, just three weeks after the incident
22  giving rise to this case.  *See Joe Hand Promotions v. Lorenzana, Inc.*, No. 13-5925 EJD, (N.D.
23  Cal.).  The undersigned has previously recommended denying enhanced damages based on
24  repeated conduct where the lawsuit corresponding to first violation was filed long after the second
25  violation.  *See J & J Sports Prods., Inc. v. Parayno*, No. 12-1704 PJH (JCS), 2012 WL 7159720,
26  at *7 (N.D. Cal. Nov. 15, 2012) *report and recommendation adopted*, 2013 WL 621920 (N.D.
27  Cal. Feb. 19, 2013).  Until an offender is given notice that damages will be sought, there is no
28  additional incentive to stop the subsequent violations.  *See id.*  Accordingly, the evidence in this

5

case does not support an award of enhanced damages based on any repeated offense.

Plaintiff argues that awarding only the amount of the sublicensing fee is insufficient to deter Defendant and others from engaging in similar, unlawful conduct. The undersigned agrees, but finds that $500 is sufficient. The Court notes that the same investigator observed Defendant's unlawful conduct on both December 8, 2012 and December 29, 2012. *See Joe Hand Promotions v. Lorenzana, Inc.*, No. 13-5925 EJD, (N.D. Cal.), Dkt. No. 13-3. Nevertheless, there is no evidence that the investigator or either one of the plaintiffs ever asked Defendant to pay a sublicensing fee or otherwise informed Defendant that damages would be sought. If Plaintiff were truly concerned with *deterring* Defendant's unlawful conduct instead of recovering damages through lawsuits such as these, then they would have sought a sublicense fee instead of quietly observing Defendant's second violation on December 29, 2012.

There is also insufficient evidence that Defendant displayed the Program for a "commercial advantage" or for "financial gain," which is required for an award of enhanced damages. *See* 47 U.S.C. § 605(e)(3)(C)(ii). As noted above, there is no evidence in this case that Defendant charged a cover or otherwise generated more revenue on Sunday, December 8, 2012, than on any other Sunday night. *See J & J Sports Prods., Inc. v. Lopez*, No. 12-5784 SBA, 2013 WL 6091618, at *3 (N.D. Cal. Nov. 19, 2013) (listing cases from this district in which courts decline to award enhanced damages without a strong showing that the defendant profited from the event); *J & J Sports Prods., Inc. v. Parayno*, No. 12-2223 SI, 2012 WL 3277279, at *2 (N.D. Cal. Aug. 10, 2012) (declining to award enhanced damages and noting that courts in this District award damages "slightly over the statutory minimum" in the absence of a showing of egregious conduct). Accordingly, Plaintiff is not entitled to an award of enhanced statutory damages.

### 2. Damages for Conversion

Damages for conversion are the value of the property at the time of the conversion and compensation for the time and money properly expended in pursuit of the converted property. Cal. Civ. Code § 3336. However, Plaintiff is already being compensated for the cost of the license through the statutory damage award under the Communications Act. Because Plaintiff has made no showing that an *additional* award is justified under the circumstances presented, the

1  undersigned recommends denying Plaintiff's request for damages on its conversion claim.  *See*
2  *Lopez*, No. 12-5784 SBA, 2013 WL 6091618, at *3 (declining to award damages on the
3  conversion claim when the plaintiff is compensated through the statutory damages); *J & J Sports*
4  *Prods., Inc. v. Parayno*, C 12-02223 SI, 2012 WL 3277279 (N.D. Cal. Aug. 10, 2012) (same).

## IV. CONCLUSION

For the foregoing reasons, it is recommended that the Motion for Default Judgment be GRANTED and that Plaintiff be awarded $2,700.00 in damages. Any objections to this Report and Recommendation shall be filed within fourteen (14) days.

**IT IS SO ORDERED.**

Dated: May 13, 2014

_____
JOSEPH C. SPERO
United States Magistrate Judge