**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| J & J SPORTS PRODUCTIONS, INC., <br><br> Plaintiff, <br><br> v. <br><br> ADRIANA L. LORENZANA, <br><br> Defendant. | Case No. 5:13-cv-05554-BLF <br><br> **ORDER ADOPTING REPORT AND RECOMMENDATION AS MODIFIED BY THE COURT** <br><br> [Re: ECF No. 28] |

## I. INTRODUCTION

Plaintiff J & J Sports Productions, Inc. ("Plaintiff") sues Defendant Adriana L. Lorenzana ("Defendant") for the unlawful interception and intentional exhibition of a boxing match for which Plaintiff owned the exclusive television distribution rights. Plaintiff filed an Application for Default Judgment against Defendant, which was referred to Magistrate Judge Spero for a Report and Recommendation. Magistrate Judge Spero recommended granting Plaintiff's Application for Default Judgment, but awarding damages in an amount less than Plaintiff had requested. (Rep. & Recom., ECF 27) Plaintiff filed a Motion for De Novo Determination Re Motion for Default Judgment requesting an increase in awarded damages. (Pl.'s Mot., ECF 28) After de novo review, the Court GRANTS in part and DENIES in part Plaintiff's Motion for De Novo Determination for the reasons set forth below.

## II. BACKGROUND

Plaintiff is a sports and entertainment programming distributor that owned the exclusive nationwide distribution rights to *Manny Pacquiao v. Juan Manuel Marquez, IV Welterweight Fight Program*, which was telecast on December 8, 2012. (Compl., ECF 1 ¶ 14) This program included the main fight between Manny Pacquiao and Juan Manuel Marquez as well as

preliminary under-card bouts. (*Id.*) In order to legally broadcast the program, a commercial establishment was required to enter into a sublicensing agreement with Plaintiff. (*Id.* ¶ 15) The license authorized the establishment to display the program publicly. (*Id.*)

On the date of the telecast, investigator Nathan Tate observed the alleged unlawful exhibition of the program at Castroville Inn. (Tate Decl., ECF 12-3)[1] In his declaration, investigator Tate reported seeing one thirty-seven to forty-two-inch television set located "towards the end of the bar." (*Id.*) He noted that a cable box "was not" visible and that the restaurant "has" a satellite dish. (*Id.*) No cover charge was required to enter the restaurant in order to watch the boxing match, nor was the purchase of food or drink required. (*Id.*) Tate reported the capacity of the restaurant to be approximately eighty people. (*Id.*) During the five minutes he was there, Tate conducted three headcounts. (*Id.*) He counted fifty people on the first headcount and fifty-four people on the second and third headcount. (*Id.*)

On December 2, 2013, Plaintiff filed this action against Defendant, "the sole individual specifically identified on the California Alcoholic Beverage and Control license," (Compl. ¶ 8), alleging violations of 47 U.S.C. §§ 605, 553, conversion, and California's Business and Professions Code § 17200, *et seq*. (*Id.* ¶¶ 13-41) Defendant was served with the Complaint on February 10, 2014 and her answer was due on March 3, 2014. (Proof of Serv., ECF 9) Defendant did not file an answer and has not appeared. On March 4, 2014, Plaintiff filed a request for entry of default, which was served upon Defendant. (Req. to Enter Default, ECF 10 at 3) The clerk entered default on March 6, 2014. (Entry of Default, ECF 11)

The Court referred the motion to a Magistrate Judge for a Report and Recommendation on April 11, 2014. (Order of Reference, ECF 15) On May 13, 2014, Magistrate Judge Spero issued his Report and Recommendation in which he recommended granting Plaintiff's Application for Default Judgment. (Report & Recom., ECF 27 at 4) Plaintiff filed timely objections to Magistrate Judge Spero's Report and Recommendation on May 27, 2014, specifically objecting to (1) the

---

[1] The Tate Declaration, which is entitled "Declaration of Affiant," is a two-page fill-in-the-blank form that lacks paragraph numbers or other means for providing specific citations to the information contained therein. Thus, the Tate Declaration is cited only generally throughout this order.

1 recommended award of $2,700 in statutory damages under 47 U.S.C. § 605, (2) the recommended
2 denial of enhanced statutory damages, and (3) the recommended denial of conversion damages.
3 (Pl.'s Mot., ECF 28 at 3)

### III. LEGAL STANDARD

A district court judge may refer a matter to a magistrate judge to issue findings of fact and recommendations for the disposition of the matter. 28 U.S.C. § 636(b)(1)(B)-(C); Fed. R. Civ. P. 72(b)(1); Civ. L.R. 72-3. Any objections to the Report and Recommendation of a magistrate judge must be filed within fourteen days of receipt thereof and "specifically identify the portions of the findings, recommendation or report to which objection is made and the reason and authority therefor." Civ. L.R. 72-3(a); *See* Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1).

"The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3); *See* 28 U.S.C. 636(b)(1)(C); Civ. L.R. 72-3(a). A de novo review requires the Court to consider the matter anew, as if no decision previously had been rendered, and come to its own conclusion about those portions of the Magistrate Judge's findings and recommendations to which an objection was made. *See Ness v. Comm'r*, 954 F.2d 1495, 1497 (9th Cir. 1992). A district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).

### IV. DISCUSSION

Plaintiff does not object to Magistrate Judge Spero's recommendation to grant default judgment. For that reason, the Court will accept this recommendation unless clearly erroneous or contrary to law. In exercising its discretion to enter default judgment, the Court considers seven factors, commonly known as the "*Eitel* factors":

> (1) [T]he possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

1   The Court agrees with Magistrate Judge Spero's application of the *Eitel* factors to the facts
2   of this case. Accordingly, the Court finds that entry of default judgment is proper.

### A. Plaintiff's Objection to Statutory Damages

Magistrate Judge Spero recommends that the Court award Plaintiff $2,700 in statutory damages under 47 U.S.C. § 605. This amount was determined by considering the $2,200 commercial license fee of the boxing match plus an additional deterrent of $500. (Report & Recom., ECF 27 at 6) Plaintiff objects to the amount awarded under § 605, asserting that the Court should increase the amount to one "sufficient to compensate Plaintiff and function as an effective deterrent." (Pl.'s Mot., ECF 28 at 3) After a de novo review of the alleged facts, the Court finds that Plaintiff should be awarded the statutory minimum amount of $1,000.

The Federal Communications Act, 47 U.S.C. § 605, prohibits any person from receiving or transmitting "wire or radio" signals "except through authorized channels of transmission or reception." 47 U.S.C. § 605(a). An aggrieved party may recover a sum of not less than $1,000 and not more than $10,000 for each violation of § 605(a), as the court considers just. 47 U.S.C. § 605(e)(3)(C)(i)(II).[2]

Defendant did not charge a cover for patrons to enter the restaurant and watch the boxing match, nor did he require the purchase of food or drink. (*See* Tate Decl., ECF 12-3) There was one television set in the restaurant and the restaurant was about two-thirds full while the investigator was present. (*See id.*) Plaintiff presents no evidence that Defendant has committed any offenses prior to the one at issue in this suit. While Defendant has been entered into default for a similar case, that incident occurred three weeks after the incident at hand and no judgment has yet been entered. (Report & Recom. at 5) Given these circumstances, the Court finds minimum statutory damages to be appropriate in order to deter future violations of § 605. Accordingly, Plaintiff is awarded $1,000 in statutory damages under 47 U.S.C. § 605.

---

[2] Because Plaintiff does not object to a damage award under 47 U.S.C. § 605, a de novo analysis of whether damages should be granted under 47 U.S.C. § 605 or 47 U.S.C. § 553 is unwarranted. However, the Court agrees with Magistrate Judge Spero's reasoning for granting damages under § 605 as opposed to § 553.

### B. Plaintiff's Objection to Enhanced Damages

Magistrate Judge Spero recommends denying Plaintiff enhanced damages under 47 U.S.C. § 605 because there was insufficient evidence to show that Defendant previously violated the statute or "displayed the Program for a 'commercial advantage' or for 'financial gain.'" (Report & Recom. at 6) Plaintiff objects to the denial of enhanced damages emphasizing that the absence of certain factors, such as a cover charge, should not be considered determinative in denying enhanced damages. (Pl.'s Mot. at 8) Plaintiff requests enhanced damages "sufficient to compensate Plaintiff and function as an effective deterrent against both this Defendant and other potential pirates." (*Id.* at 3) The Court agrees with Magistrate Judge Spero's recommendation and declines to award enhanced statutory damages.

Enhanced damages are available when the statutory violation was committed willfully or for the purpose of commercial advantage or private financial gain. *See* 47 U.S.C. § 605(e)(3)(C)(ii). While the Ninth Circuit has not articulated a test for determining when enhanced damages are appropriate, district courts consider a variety of factors including the "use of cover charge, increase in food price during programming, presence of advertisement, number of patrons, number of televisions used, and impact of the offender's conduct on the claimant." *Concepcion*, 2011 WL 2220101, at *4. Courts also have awarded enhanced damages when the defendant has previously violated the statute. *See J & J Sports Prods., Inc. v. Paniagua*, No. 10-CV-05141-LHK, 2011 WL 996257, at *2 (N.D. Cal. Mar. 21, 2011).

Although Plaintiff cites several out-of-district cases to support its request for maximum enhanced damages, Plaintiff does not cite any binding precedent or identify any specific circumstances that justify such a high award here. (*See* Pl.'s Appl., ECF 12-1 at 15-18) As discussed above, Defendant did not charge a cover to patrons to enter the restaurant or require the purchase of food or drink on the night of the boxing match. Defendant had one thirty-seven to forty-two-inch LCD television set showing the boxing match. (Tate Decl., ECF 12-3) There were between fifty and fifty-four patrons present in the restaurant. (*Id.*) Plaintiff provides no evidence of prior violations, significant earnings by Defendant that night, or advertising of the exhibition of the boxing match to draw a larger crowd. (*See id.*) Accordingly, enhanced damages are not

warranted.

### C. Plaintiff's Objection to Conversion Damages

Finally, Magistrate Judge Spero recommends denying Plaintiff damages for conversion because "Plaintiff is already being compensated for the cost of the license through the [recommended] statutory damages award." (Report & Recom. at 6) Plaintiff objects to the denial of conversion damages asserting that the reimbursement of the cost of the licensing fee should not be denied because the Magistrate Judge based the statutory damages on that same fee. (Pl.'s Mot. at 9) Plaintiff requests $2,200 in damages for conversion under California Civil Code § 3336. After de novo review, the Court grants Plaintiff's request for damages.

The Ninth Circuit has held that a claim for conversion has three elements: "ownership or right to possession of property, wrongful disposition of the property right and damages." *G.S. Rasmussen & Assocs., Inc. v. Kalitta Flying Serv., Inc.*, 958 F.2d 896, 906 (9th Cir. 1992). These elements are satisfied because Plaintiff alleges ownership of the distribution rights to the program, misappropriation of those rights by Defendant's unlawful interception, and damages. (*See* Compl., ECF 1 ¶¶ 28-31) Damages for conversion are based on the value of the property at the time of the conversion. Cal. Civ. Code § 3336. According to an affidavit provided by Plaintiff, Defendant would have been required to pay $2,200 for a sublicensing agreement because the commercial establishment had a maximum capacity of approximately eighty persons. (Affidavit of Gagliardi, ECF 21 ¶ 8) Because Defendant did not enter into an agreement and pay the required fee, Plaintiff is entitled to $2,200 in conversion damages.

## V. CONCLUSION

For the reasons stated above, the Court GRANTS Plaintiff's Application for Default Judgment. Plaintiff is awarded a total of $3,200: $1,000 in statutory damages under 47 U.S.C. § 605 and $2,200 in damages for conversion. Judgment shall be entered accordingly.

**IT IS SO ORDERED.**

Dated: July 2, 2014

BETH LABSON FREEMAN
United States District Judge

6